# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADE D. LEONARD, a minor by and | : | |
| through her mother and natural guardian, | : | |
| SHEILA DEVLUGT | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 08-2016 |
| OWEN J. ROBERTS SCHOOL | : | |
| DISTRICT, CORY BISSLAND, a minor by | : | |
| and through his parents and natural | : | |
| guardians, DONALD BISSLAND and | : | |
| DEBBIE BISSLAND, and in their own | : | |
| right, DAVID DEROFFLO and | : | |
| ERIC WENTZLE | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                    March 4, 2009

Currently before the Court is the Motion to Dismiss of Defendants Owen J.

Roberts School District (the "School District"), David Derofflo, and Eric Wentzle (collectively,

the "School District Defendants"), and the Response in Opposition of Plaintiff Jade D. Leonard.

For the following reasons, it is ordered that the Motion to Dismiss is granted.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff Jade D. Leonard, a minor, was a member of the Owen J. Roberts High

School    ("High School") track and field team.  (Compl. ¶¶ 10-11).  Defendant David Derofflo

and Defendant Eric Wentzle were the head coach and assistant coach, respectively, for the High

School track and field team.  (Id. ¶ 13).  On May 1, 2006, Plaintiff was participating in an after

school training session at the High School when Defendant Corey Bissland threw a javelin that impaled her, causing serious injury. (Id. ¶¶ 14-16). Representatives from the High School left a voicemail message at Plaintiff's home for someone to pick her up. (Id. ¶ 16). Leonard's stepfather heard the message and proceeded to take her to an emergency room for treatment. (Id.) Plaintiff claims Defendants Derofflo and Wentzle, against High School policy, were not properly coaching, training, and protecting the students in athletics at the time of the incident. (Id. ¶¶ 17, 19). Plaintiff's injuries and conditions include, but are not limited to, the impalement injury to her left thigh, persistent pain, loss of balance, headaches, and depression. (Id. ¶ 23).

On April 29, 2008, Plaintiff filed a Complaint containing five Counts. Plaintiff claims that Defendant Cory Bissland acted negligently, carelessly, and recklessly when he threw a javelin that hit Plaintiff, and that the School District, David Derofflo, and Eric Wentzle acted negligently and violated Plaintiff's substantive and procedural due process rights under both the United States and Pennsylvania Constitutions, and under 42 U.S.C. § 1983. Plaintiff seeks, *inter alia*, punitive damages from Defendant Bissland and the School District Defendants as to all Counts.

On May 29, 2008, Defendants Derofflo, Wentzle, and the School District filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12 (b)(6). Defendants request that the Court dismiss: (1) Counts IV and V because the School District Defendants are immune from Plaintiff's negligence claims under the Political Subdivision Tort Claims Act; (2) Counts II and III, because there is no cause of action for monetary damages under the Pennsylvania Constitution; (3) the Fourteenth Amendment, section 1983 claims as a matter of law; and (4) the claims to recover punitive damages against the School District. On June 12, 2008, Plaintiff filed

a Brief in Opposition to Defendants' Motion to Dismiss the Complaint, and on June 20, 2008,

Defendants filed a Supplemental Memorandum in Support of their Motion to Dismiss the

Complaint.

## II.  STANDARD OF REVIEW FOR MOTION TO DISMISS

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of

a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a

defendant bears the burden of demonstrating that plaintiff has not stated a claim upon which

relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering such a motion to dismiss, the

court must "accept as true allegations in the complaint and all reasonable inferences that can be

drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v.

City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Notably, though, the court will not

accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in

the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997). The question before the court is not whether the plaintiff will ultimately prevail.  Hishon

v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court should

only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief."  Id. (citing  Conley v.

Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  "The defendant bears the burden of

showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir.

2005).

III. **DISCUSSION**

Plaintiff brings this action against Defendants under 42 U.S.C. § 1983 for

violating:  (1) her substantive and procedural due process rights to bodily integrity; (2) her right

to freedom from state-created dangers; (3) her right not to be harmed as protected by the United

States Constitution; and (4) the Pennsylvania Constitution.  Defendants' argue that Plaintiff's

claims are not cognizable because:  (1) Plaintiff has not alleged any facts to support a procedural

due process claim against any Defendant; (2) there is no special relationship between Plaintiff

and the School District; (3) Plaintiff fails to state a claim for state-created danger; and (4)

Plaintiff has not alleged facts to support a section 1983 claim against the School District as a

municipal entity.

In addition to addressing the section 1983 claims, Defendants Derroflo and

Wentzle argue that Plaintiff's claims against them in their official capacities should be dismissed,

as a suit against them is no different than a suit against the School District.  The Court will

address this matter before the remaining issues.

A.    **Official Capacity Claims Against Defendants Derroflo and Wentzle**

Plaintiff states in her Complaint that she is "making out claims for compensatory

and punitive damages against the School District Defendants and employees in both their

personal and official capacity."  (Pl.'s Mem. Opp. 1).

The United States Supreme Court has consistently distinguished between Section

1983 suits against defendants acting in their official capacities and those against defendants

acting in their personal capacities. "[O]fficial capacity suits generally represent an action against

an entity of which an officer is an agent."  Monell v. New York Dept. of Social Servs, 436 U.S.

4

658, 690 n. 55 (1978). <u>See also</u>, <u>Brandon v. Holt</u>, 469 U.S. 464 (1985).  The general rule

regarding an official's liability under Section 1983 is "that a judgment against a public servant

'in his official capacity' imposes liability on the entity that he represents, provided, of course, the

public entity received notice and an opportunity to respond."  <u>Brandon</u>, 469 U.S. at 471-72.

   In <u>Pelkoffer v. Deer</u>, 144 B.R. 282 (W.D. Pa. 1992),  Plaintiff sought damages

under Section 1983 from the defendant both individually and in his official capacity as the

elected constable of the Borough of Bellevue.  <u>Id.</u> at 283-84.  Plaintiff also sought damages from

the Borough itself, which received notice and an opportunity to respond.  <u>Id.</u>  The court held,

under the principles set forth in <u>Brandon</u> and its progeny, that the Borough is ultimately liable for

any judgment against the defendant in his official capacity.  <u>Id</u> at 285.

   Similarly, Plaintiff seeks damages from Defendants Derroflo and Wentzle in their

official and individual capacities.  The School District received notice and responded to

Plaintiff's Complaint.  Following <u>Brandon</u>, Defendants Derroflo and Wentzle are not liable for a

judgment against them in their official capacities.

   **B.**  **Procedural Due Process**

   Plaintiff argues that school students have a constitutional liberty interest in

personal bodily integrity that is protected by the Due Process Clause of the Fourteenth

Amendment.  <u>D.R. v. Middle Bucks Area Vocational Tech. Sch.</u>, 972 F.2d 1364, 1368 (3rd Cir.

1992) (citing <u>Ingraham v. Wright</u>, 430 U.S. 651, 672-74 (1977)).  Plaintiff explains that the

gravamen of the cause of action stems from the School District Defendants' willful disregard and

indifference to the rights, safety, and harm endured by Plaintiff.  She argues that "when a minor

is injured, her adult coaches should not leave the decision to seek medical care up to her.

Reasonable minds could interpret that as effectively preventing or at least hindering access to medical care."  (Pl.'s Reply Br. 5).

Defendant responds that to establish a violation of Plaintiff's constitutional right to procedural due process, Plaintiff must plead and provide the following two elements:  (1) that a person acting under color of state law deprived her of a protected property interest, and (2) the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.  Bello v. Walker, 840 F. 2d 1124 (3d Cir. 1988); Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667 (3d Cir. 1991).

"Due process of law" requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property.  Clentscale v. Beard, Civ. A. No. 07-307J,  2008 WL 3539664 (W.D. Pa. August 13, 2008) (citing  Zappan v. Pa. Bd. of Prob. and Parole, 152 Fed. Appx. 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.")).  To establish a prima facie case of a procedural due process violation, a plaintiff must establish:  (1) the existence of a liberty or property interest; (2) that the state deprived the person of and; (3) that the deprivation was accomplished without procedural protections of notice and an opportunity to be heard.  See Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state-sponsored deprivation of a protected interest in life, liberty or property.  If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.") (citation omitted); Castro Rivera v. Fagundo, 310 F. Supp. 2d 428, 434 (D. P.R. 2004) (listing elements of prima facie case).

In <u>Daniels v. Williams</u>, 474 U.S. 327 (1986), an inmate brought civil rights actions against a deputy sheriff to recover for injuries allegedly sustained when he slipped and fell on a pillow left on the jail stairs by the deputy sheriff.  Justice Stevens, in his concurrence, recognized that the interest in freedom from bodily harm surely qualifies as an interest in "liberty."  <u>Id.</u> at 341 (Stevens, J., concurring).  He explained that when a plaintiff raises a procedural due process claim it is necessary to examine the nature of the plaintiff's challenges to the state procedures.  <u>Id.</u>  To prevail, plaintiff must demonstrate that the state procedures for redressing injuries are constitutionally inadequate.  <u>Id.</u>  Further, they must show that they contain a defect so serious that can characterize the procedures as fundamentally unfair, a defect so basic that we are forced to conclude that the deprivation occurred without due process.  <u>Id.</u>

Plaintiff's states in her argument that "pursuant to the policy of the Owen J. Roberts School District, the coaches were to be present at all training sessions and the coaches primary purpose is to organize, develop, and direct athletic program[s] which will promote, protect, and conserve the health and physical welfare of all student participants."  (Pl.'s Reply Br. 6). However, Plaintiff misses the point of <u>Daniels</u>.  The court is not concerned with the action of the state officials in respect to the state policy, but rather the content of the state policy and whether it is fair.  Plaintiff's cause of action stems from her claim that the School District Defendants failed to abide by the comprehensive policy of the School District resulting in the deprivation of her liberty interest.  By acknowledging the duty of the Defendants as described in the policy and claiming that if they had met their duty the injury would not have occurred, Plaintiff destroys her chance to claim that the policy is in some way unfair or inadequate.  Her argument focuses on the action of the Defendants, rather than the adequacy of the policy.

Accordingly, Plaintiff fails to establish that the policy is fundamentally unfair or defective.

Therefore, her claim for a violation of procedural due process is dismissed.

### C.    Substantive Due Process

Under section 1983, a plaintiff must establish a deprivation of a constitutional

right and that it was caused by a person acting under the color of state law. Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  In the present case, Plaintiff alleges a deprivation of her right to

bodily integrity under the Fourteenth Amendment. D.R. 972 F.2d at 1368 (3d Cir. 1992)

(holding that individuals have a constitutional liberty interest in personal bodily integrity that is

protected by the Due Process Clause of the Fourteenth Amendment.) (citing Ingraham v. Wright,

430 U.S. 651, 672-74 (1977)). In general, the State has no affirmative duty to protect its citizens

from the violent acts of private individuals. See, e.g. DeShaney v. Winnebago County Dep't of

Soc. Serv., 489 U.S. 189, 195-96 (1989). The exceptions to this rule occur when there is (1) a

"special relationship" between a person and the state, or (2) a "state created danger." Kneipp, 95

F.3d at 1204-05.

Plaintiff advances two bases for her substantive due process claim: (1) that the

state had a special relationship with Plaintiff and failed to protect her from the private actions of

third party; and (2) the state-created danger theory. She argues that her claims against the School

District Defendants "outlines sufficiently culpable circumstance when the School District

Defendants failed to protect the health and safety of the citizens within its border."  (Pl.'s Mem.

Opp. 6.)  She also alleges that she was unable to help herself or prevent the events that took place

on May 1, 2006. Id.  "The fostering and harboring and allowance of this type of practice and

custom of providing dangerous weapons like the javelin and failing to institute and/or enforce

safety standards for student athletes, and by creating an atmosphere among its coaching staff that safety was of secondary importance is enough to meet the special relationship standard." Id. The Court considers each of these theories separately.

### 1.    Special Relationship

The "special relationship" basis for a substantive due process violation provides that if the state has taken a person into its custody and is holding that person against his or her will, the state has formed a special relationship that imposes "affirmative duties of care and protection on the state." Kneipp, 95 F.3d at 1204. The special relationship may be created by "the State's affirmative act of restraining the individual's freedom to act on his own behalf, through incarceration, institutionalization, or other similar restraint of personal liberty," because that act deprives the plaintiff of liberty under the Due Process Clause. DeShaney, 489 U.S. at 200. The Third Circuit considered whether compulsory schooling was a similar restraint of personal liberty in D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1369 (3d Cir.1992) (en banc). The plaintiff argued that compulsory attendance laws and the *in loco parentis* status of school employees placed students in custody during the school day, which established a special relationship such that section 1983 liability was available. Id. at 1370. The court rejected this argument and explained that the state must have exclusive physical custody in order to establish a special relationship with an individual. Id. at 1370-71. The court found that parents remain the primary caretakers of students and that there is not sufficient restraint on students' personal liberty to constitute a special relationship for purposes of the Due Process Clause. Id. at 1371-72. This ruling continues to be binding in the Third Circuit. See Nicini v.

Morra, 212 F.3d 798, 807-08 (3d Cir. 2000), Gremo v. Karlin, 363 F. Supp. 2d 771 (E.D. Pa. 2005).

Plaintiff fails to show how the School District had exclusive physical custody of her at the time of the accident.  The Court does not see how Plaintiff's claim that the School District "failed to protect the health and safety of the students within its border" is different from the "compulsory attendance law" argument presented in D.R.   Therefore, the Court finds that Plaintiff does not make sufficient allegations to demonstrate a special relationship for purposes of the Due Process Clause.

### 2.      State-Created Danger

The "state-created danger" basis for liability was originally drawn from the language in the Supreme Court decision in DeShaney, 489 U.S. at 201, and was specifically adopted by the Third Circuit in Kneipp, 95 F.3d at 1199.  The Third Circuit established a four-part test to determine whether there existed a state-created danger such that a state actor should be held constitutionally liable for injuries to a plaintiff.  Liability attaches if the following four prongs are satisfied: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Kneipp, 95 F.3d at 1208 (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir.1995)).

The School District Defendants argue that Plaintiff has not stated a cognizable claim for state-created danger because there are no facts to support either the second or fourth prong of the test.  (Defs.' Reply Br. 6).  The Court focuses on these arguments.

### a.        State-Actor Acted in Willful Disregard

 In County of Sacramento v. Lewis, the Supreme Court explained that for purposes of a substantive due process violation, abusive executive actions must abuse power to the extent that it "shocks the conscience" in order for it to be "arbitrary in the constitutional sense." 523 U.S. 833, 846 (1998) (citation omitted).  It further explained that a showing of "deliberate indifference" by executive actors may be sufficient to demonstrate a violation of substantive due process.  Id. at 850.

The Third Circuit similarly defined the required mental state to determine whether a state-created danger exists as either "willful disregard for" or "deliberate indifference to" the safety of the plaintiff.  Gremo, 363 F. Supp. 2d.,  Morse, 132 F.3d at 910 (citing Kneipp, 95 F.3d at 1208 n.21).  Under this standard, the danger must have been foreseeable to the state actors and "the state's actions must evince a willingness to ignore" that foreseeable risk of danger.  Id.  A harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm.  Id. at 784.

 For example, in Kneipp, when a police officer left an intoxicated woman outside alone late at night, ordinary common sense and experience, in this instance attributed to the officer, sufficiently informed the officer of the risk of harm to the woman. This concrete information put him on notice that his action significantly enhanced the risk of harm to the

woman. Thus, the court concluded that the harm incurred by the woman in <u>Kneipp</u> was foreseeable.

Likewise, in <u>Gremo</u>, the plaintiff alleged that a group of students had been attacking innocent victims for over two years. 363 F. Supp. 2d at 778.  The court found that this meant defendants may well have had two years to act to address the repeated attacks by the group of approximately fifteen students. <u>Id.</u> at 787-788.  Failure to address such behavior over an extended period of time, the court said, amounted to "deliberate indifference," to the safety of the students.

Under the present facts, Defendants Derofflo and Wentzle's duties, responsibilities, and training as coaches should have put them on notice that high school students left unmonitored, while performing in potentially dangerous sports, enhances their risk of injury and harm, irrespective of whether Defendant Bissland's actions were deliberate.  Therefore, the Court finds, when viewing the facts in the light most favorable to Plaintiff, that Defendants could have foreseen the danger.

  **b.**  **State Actors' Authority to Create Opportunity for Third Parties' Crime**

In addressing the fourth prong of the state-created danger test, the Court must decide whether the individual Defendants used their authority to create an opportunity that otherwise would not have existed for Bissland's actions to occur.  The dispositive consideration, as stated in <u>Morse</u>, is "whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable."  <u>Id.</u> at 915.  When performing this analysis, the court in <u>Kneipp</u>, asked whether the defendants "used their authority . . . to create a dangerous situation or to make

12

[plaintiff] more vulnerable to danger had [the defendants] not intervened." Kneipp, 95 F.3d at 1209.

In Mohammed ex rel. Mohammed v. School Dist. of Phila. 355 F. Supp. 2d 779 (E.D. Pa. 2005), the plaintiff was walking between the third and fourth floors of his high school, when a student attacked another student directly in front of him. Id. at 781.  The attacker attempted to punch the student in front of him, but the student ducked, and the punch struck Plaintiff in the eye, causing severe injury.  Id.  The court found that it was not the School District's actions or inaction that created an opportunity for an unidentified attacker to throw a punch at the plaintiff.  "Although having surveillance or a police officer in the stairwells may have aided in apprehending the attacker, it would not have prohibited him from throwing the punch.  As stated above, Defendants' actions, or lack thereof, did not directly result in Richard becoming the victim of the misguided punch." Id. at 786.

Presently, Plaintiff alleges that the failure of the School District Defendants to take appropriate steps to address and monitor potentially unsafe athletic activities put Leonard in a foreseeable, dangerous position.  The Court does not agree with Plaintiff.  The action, or lack thereof, of Defendants David Derofflo and Eric Wentzle did not directly result in Leonards' injury.  Their presence at practice, like that of a police officer, may have caused Bissland to act with more care.  But, even a heightened level of care on the part of Bissland would not have eliminated the possibility of his action.  Much like the deliverer of the poorly placed punch in Mohammed, it was Bissland's decision to throw the javelin that placed Plaintiff in harm's way.  Therefore, Plaintiff fails to establish the final element of the state-created danger test.  Failure to

do so bars Plaintiff from successfully showing a violation of her Section 1983 substantive due process right to bodily integrity under the Fourteenth Amendment.

**D.    Whether the School District Defendants Are Immune from Plaintiff's Negligence Claims under the Political Subdivision Tort Claims Act**

Plaintiff claims to have a cause of action against the School District Defendants in their individual capacity for negligence and/or willful misconduct.  (Pl.'s Mem. Opp. 4) (citing see Debartolo v. City of Phila., 159 F. Supp. 2d. 795, 801 (E.D. Pa. 2001); Kaufman v. Wilson Police Dept., 739 F. Supp. 257 (E.D. Pa. 1990)).

Defendant argues that Plaintiff's negligence claims are barred based upon the immunities provided by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C. S. §§ 8541 *et seq*.  Plaintiff avers that "qualified immunity does not shield the School District Defendants under Section 1983 when the conduct violates established statutory or constitutional rights, which a reasonable person would have known, or as long as individual defendants in their capacity would have reasonably believed their acts did not violate those rights in light of clearly established law and the information they possessed."  (Pl.'s Mem. Opp. 3) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In response, Defendants aver that they have not suggested that the Tort Claims Act shields them from a Section 1983 claim.  Rather, the Torts Claim Act immunity shields them from the negligence claims averred in the Complaint.  Plaintiff, they argue, has not alleged any intentional or willful misconduct against them such that immunity would be waived.  Id.[1]

---

1.   The Court does not agree with Defendants' contention that Plaintiff has not alleged willful misconduct. Although Counts IV and V in the Complaint specifically mention negligence, within the heading to both Counts, Plaintiff further avers that Defendants "acted in willful disregard for the rights and safety of the Plaintiff with deliberate indifference to the harm and potential for harm to the Plaintiff." (Compl. ¶¶ 65, 72)

14

Plaintiff contends that under the Torts Claim Act, municipalities and its agencies are excepted from general grant of immunity if the following conditions are met: (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury had been caused by a person not protected by immunity, and (2) the claim falls within one of the Act's statutory exceptions to governmental immunity.

The cause of action for personal injury sounds in tort and, thus, is governed by the Tort Claims Act, 42 Pa.C.S. §§ 8501, et seq. Richardson v. City of Phila., Civ. A. No. 89-8901, 1992 WL 46899, at *10 (E.D. Pa. Mar. 6, 1992). The Tort Claims Act provides, in pertinent part, that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or any employee thereof or any other person." 42 Pa.C.S. § 8541. Pursuant to that statute, municipal entities and their employees acting in their official capacities are generally immune from tort liability based on negligence unless the alleged misconduct fits into one of the few narrow categories enumerated in the statute – none of which apply here.[2] Bright v. Westmoreland County, 380 F.3d 729, 750 (3d Cir. 2004); Townsley v. West Brandywine Twp., Civ. A. No. 06-728, 2006 WL 1147267, at *8 (E.D. Pa. Apr. 26, 2006). Accordingly, Plaintiff's claims for negligence are barred by the Tort Claims Act.

Notably, immunity does not extend to a municipal employee, in his or her individual capacity, if the act of the employee that caused the injury constituted a crime, actual fraud, actual malice or willful misconduct. 42 Pa.C.S. § 8550; see also Pollarine v. Boyer, Civ.

---

2. The eight statutory exceptions to immunity in Section 8542(b) of the Tort Claims Act are: (1) the operation of a motor vehicle; (2) the care, custody or control of personal property; (3) the care, custody or control of real property; (4) a dangerous condition of trees, traffic signs, or other traffic controls; (5) a dangerous condition of utility service facility; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of certain animals. 42 Pa. Cons. Stat. § 8542(b)(1-8).

A. No. 04-5312, 2005 WL 1806481, *3 (E.D. Pa. Jul. 29, 2005).  Although Plaintiff does not set

forth a specific claim for willful misconduct, she has alleged that Defendants acted with willful

disregard[3] in the fourth and fifth Count of her Complaint and willful misconduct in her Response.

(Pl.'s Mem. Opp. 3).  Plaintiff has produced sufficient evidence, which, if deemed credible by a

jury, could prove that the School District Defendants acted with willful misconduct.  Therefore,

at this juncture, the Court declines to deem them immune under the Torts Claim Act.

## E.  CONCLUSION

In light of the foregoing, this Court does not find either that Plaintiff's claims that

Defendants were state actors within the meaning of 42 U.S.C. § 1983, or that they violated her

substantive and procedural due process rights to bodily freedom from state-created dangers.

Accordingly, the Motion to Dismiss is granted as to all federal claims (Counts II and III).

Moreover, in light of the dismissal of all federal claims, the Court, in its discretion, declines to

exercise supplemental jurisdiction over the remaining state law claims of negligence against Cory

Bissland, Donald Bissland, and Debbie Bissland, and the willful misconduct claim against the

---

3.  In this instance, the Court recognizes willful disregard to be synonymous to willful misconduct.

School District Defendants.[4]  The Court, therefore, dismisses these state law claims (Counts I,

IV, and V) without prejudice.[5]

An order follows.

---

4.   Under 28 U.S.C.A. § 1367, a court has supplemental jurisdiction over state law claims that are related to claims within the court's original jurisdiction.  After dismissal of all federal claims, a district court may decline to exercise supplemental jurisdiction over the remaining state law claims if it finds that the parties will not be prejudiced and that the interests of judicial economy would be served. See Stehney v. Perry, 101 F.3d 925, 938 (3d Cir.1996).
            Given the unresolved state law matters in this case, with which the state courts are more familiar, it is appropriate to decline to exercise supplemental jurisdiction over the remaining negligence and willful misconduct state law claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state law claims should be dismissed as well.")

5.   Our dismissal of Plaintiff's state law claims does not prejudice her on statute of limitations grounds from bringing such claims in state court. Under 28 U.S.C.A. § 1367, Congress expressly provided:
            The period of limitations for any claim asserted under section (a), and for any
            other claim in the same action that is voluntarily dismissed at the same time as or
            after the dismissal of the claim under subsection (a), shall be tolled while the
            claim is pending and for a period of 30 days after it is dismissed unless State law
            provides for a longer tolling period.
28 U.S.C.A. § 1367(d), See also Hedges v. Musco, 204 F.3d 109, 122-123 (3d Cir.2000) ( "a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days") (quoting Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11th Cir.1998)); Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir.1998) ( "Section 1367(d) ensures that the plaintiff whose supplemental jurisdiction is dismissed has at least thirty days after dismissal to refile in state court.").

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADE D. LEONARD, a minor by and | : | |
| through her mother and natural guardian, | : | |
| SHEILA DEVLUGT | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 08-2016 |
| OWEN J. ROBERTS SCHOOL | : | |
| DISTRICT, CORY BISSLAND, a minor by | : | |
| and through his parents and natural | : | |
| guardians, DONALD BISSLAND and | : | |
| DEBBIE BISSLAND, and in their own | : | |
| right, DAVID DEROFFLO and | : | |
| ERIC WENTZLE | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 4th day of March, 2009, upon consideration of Defendants'

Motion to Dismiss (Docket No. 2), together with Defendants' Memorandum of Law in support

thereof, Plaintiff's Response and Memorandum of Law in Opposition to the Motion (Docket No.

4), and Defendants' subsequent Supplemental Memorandum in Support of their Motion to

Dismiss (Docket No. 5 ), it is hereby **ORDERED** that Defendants' Motion to Dismiss is

**GRANTED**, as follows: (1) Counts II and III are dismissed with prejudice; and (2) Counts I, IV,

and V are dismissed without prejudice to Plaintiff's refiling them in the appropriate state forum.

This case is **CLOSED.**

BY THE COURT:


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.